STATE OF MISSOURI, Respondent, v. W. ROTHSCHILD, Appellant.

St. Louis Court of Appeals, October 27, 1885.

CRIMINAL LAW—LOTTERY—EVIDENCE.—Evidence that the defendant sold a slip of paper bearing certain numbers which represented the purchaser's title to a prize which might be drawn by such numbers in a lottery, or game of chance in the nature of a lottery, then intended to be drawn, is sufficient to sustain a conviction.

APPEAL from the St. Louis Court of Criminal Correction, E. A. NOONAN, Judge.

*Affirmed.*

J. W. COLLINS, for the appellant.

J. R. CLAIBORNE, for the respondent.

LEWIS, P. J., delivered the opinion of the court.

This is a conviction upon information, in the usual form, for the crime of selling a lottery ticket. The testimony given at the trial was as follows: William Morse testified: "I know the defendant. On January 15, 1885, I saw him on Seventh street in this city, at his office there. I went into defendant's office to play policy. I took a piece of paper from his table and wrote the following, to-wit: 48–50–71–27–69, and paid the defendant ten cents to play said numbers. I went into defendant's office to play policy. If the numbers on my ticket had won, I would have got from one dollar to six dollars and forty cents. I had played policy before. The defendant told me to come back at one o'clock, and I would find out whether my ticket won or lost. I went back to his office and found that my ticket had lost." A piece of paper was shown witness with the numbers 48–50–71–27–69, and the numbers $\left(\frac{2\,9}{6\,5}\right)$ in a circle, as here represented, on it, and identified by him as the paper he wrote the numbers on and paid defendant ten cents for. "The numbers on the ticket $\left(\frac{2\,9}{6\,5}\right)$ were written by the defendant. The defendant transcribed the numbers from my ticket into a book on his table." On cross-examination, said witness, Morse, testified as follows: "I don't know whether the ticket shown in evidence with the numbers on, and which I paid defendant ten cents for, is a ticket on a horse race, or is a lottery, or policy ticket. It might have been a ticket on a horse race. I bought it as a policy ticket."

Geo. W. Badger: "I am an officer on the police force, and arrested the defendant at his office. When I went in he was writing." A paper is here shown witness with numbers on it, which he says he got in defendant's possession; and he further says: "I don't know what the numbers are supposed to represent."

George Leonard: "I am an officer on the police force, and know what policy is and how it is played. In policy, the player can select his own numbers out of num-

bers, running from one to seventy-eight. He can select one or more numbers out of these, and the winnings are in proportion to the numbers, and the amount of money placed on them. Out of these seventy-eight numbers, the first thirteen that come out are the winners. Policy is a game of chance in the nature of a lottery. It is determined by a drawing. Seventy-eight numbers are placed in the wheel or box, and the first thirteen numbers drawn out are the winners."

The defendant relies on a supposed close resemblance between the evidence upon which he was convicted, and that in the cases of *The State v. Russell* (17 Mo. App. 16), and *The State v. Sellner* (17 Mo. App. 39), in which this court held that the testimony in either case was insufficient to convict. But the attempted parallel fails. While it is true that the same sort of facts were substantially proved in the former cases and in this, it is also true that in the present record there are some additional facts which have precisely the criminating efficacy that was wanting to the other prosecutions. The essentially weak point in the two cases mentioned lay in the failure to show that "policy" was a device in the nature of a lottery, or a gambling game of any sort. Thus, whatever incidental facts were proved, touching the conduct of the parties concerned, the purchasing of a paper with numbers marked on it, the entry of the numbers in a book, the direction to come back for returns, etc., they were all unavailable, because it was not shown that they had the least connection with any criminal act or device. But in the present case it is distinctly proved that "policy is a game of chance in the nature of a lottery. It is determined by a drawing." This explanation imparts to the other testimony a meaning which enables it to make out a very different case. It is urged that the evidence fails to show a word spoken by the defendant which can connect him with the sale of a lottery ticket to the witness.

Morse testifies: "It might have been a ticket on a horse race. I bought it as a policy ticket." When A says: "I bought the horse of B for fifty dollars," we are

distinctly informed that B sold the animal for that price, without a word of his utterances in the transaction, and just as effectually as if all his talk were repeated. If the witness bought the ticket as a policy ticket, and the defendant sold it as something else, the latter fact should have been brought out, by cross-examination or otherwise. This court said, in *The State v. Hindman* (4 Mo. App. 582) : "If the defendant sold to the purchaser a slip of paper bearing characters which represented, or were intended to represent, the purchaser's title to a prize which might fall to such characters in a lottery [or, we may here add, a game of chance in the nature of a lottery] then intended to be drawn, the offence, under the statute, was complete."

We consider that there was testimony in the present case, competent, and tending to establish these conditions. And as the jury found it sufficient for a conviction, and we find no reason for an interference with their verdict, the judgment must be affirmed. All the judges concur.