STATE _vs._ SEAMAN L. WETHERELL.

January Term, 1898.

Present:  ROWELL, TYLER, START and THOMPSON, JJ.

_Exhibits in the Jury Room—Communication Deciphered by Witness._

Letters of a criminatory nature which the testimony of the State, including a comparison of hands, tended to show were written by the respondent, were properly permitted to go to the jury room, in connection with the standards, to be read, examined and compared.

The prisoner mailed to the prosecutrix a copy of a magazine in which, as the State's testimony tended to show, certain letters and words had been marked by him to be read by the prosecutrix, who testified to having picked out the sentences after receiving the magazine.  The court properly permitted a witness who had made a collocation of these letters and words to testify how they read when taken in the order in which they were marked.

The magazine itself was properly permitted to go to the jury, that they might decipher the communication for themselves if necessary.

INDICTMENT for rape upon a girl under the age of fourteen

years. Trial by jury at the September Term, 1897, Windham County, *Ross*, C. J., presiding. Verdict guilty. The respondent excepted.

*J. G. Martin* and *O. E. Butterfield* for the respondent.

If the magazine was ambiguous, the ambiguity was patent and not explainable by parol. The magazine and letters should not have been permitted to go to the jury-room. It was a breach of the Constitution which requires that the respondent shall be confronted by the witnesses. It would have been as proper for the witnesses to have gone into the jury room and repeated their testimony there.

*Charles H. Robb*, State's Attorney, for the State.

ROWELL, J. The State introduced certain letters, criminatory if written by the prisoner, which the testimony tended to show, and among it was the comparison of hands. It was not only highly proper, but quite necessary, that these letters and the standards should go to the jury-room, to be read, examined, and compared by the jury, as the court permitted, and so no error.

It appeared that the prisoner mailed to the prosecutrix a copy of a magazine called *The Black Cat.* The State claimed, and its testimony tended to show, that certain words and letters in said magazine were marked and dotted by the prisoner for the purpose of influencing the prosecutrix, who testified to having picked out the words and sentences after she received the magazine. The court permitted an attorney, whom it found to be an expert in handwriting, to pick out, arrange, and construct into sentences, the marked and dotted words and letters, and to testify what they meant when read in the order in which they were marked. The attorney's decipherment disclosed a communication in epistolary form, expressive of love, and containing a request to write and an injunction to remember her promise.

If the prisoner marked and dotted those words and letters, the communication was as much a letter from him as

though he had written the same thing in his own hand; and it was competent to call any one to make the decipherment, whether expert or not, as much as it would be to read a letter so illegibly written as to be difficult to make out. If the prisoner claimed that the witness did not decipher correctly, he was at liberty to show it. We do not understand that the witness did more than to read the communication as he deciphered it.

It was proper that the magazine should go to the jury, that they might decipher the communication for themselves, if necessary, as it was for them to say what was written there.

> *Judgment that there is no error in the proceedings below, and that the prisoner take nothing by his exceptions.*