# BECKER et al. v. FITCH.

No. 7247—Opinion Filed Aug. 14, 1917.

(167 Pac. 202.)

**1. Gaming—Recovery of Money Lost—Parties Liable.**

A third person whose money, without his consent or connivance, has been lost at gambling by another, may recover same in an action at law against the person or persons winning and receiving the same; and all persons concerned in conducting a system of gambling, whether as principals or agents, by which such money is lost, may be made to respond in damages to the owner of the money to the extent of the amount lost.

**2. Same—Burden of Proof.**

Before a third person can recover money lost by another at gambling, the evidence must show that the money belonged to such third person; that it came into possession of another who wagered or bet the money and lost the same; that the person sued won the money, either as principal or as agent; and that the complaining party did not consent to or connive at the money being bet or wagered.

**3. Appeal and Error—Harmless Error—Evidence.**

It is error for the trial court as a part of the case in chief of the plaintiff in the trial of an action brought for money alleged to

belong to plaintiff and to have been lost by another at gambling to permit a witness for plaintiff, over the objection of the defendants to testify that the person alleged to have bet and lost the money told the witness that at one time he had lost $20 and at another time $50 in a gambling transaction with the defendants, and under the evidence in the instant case such error is prejudicial.

### 4. Gaming—Action to Recover Money Lost —Proof—Amount.

In an action for damages for money alleged to have been bet and lost by another, there should be some evidence of a definite amount lost; the jury ought not to be permitted to speculate as to the amount, but their verdict should represent an intelligent finding as to the amount based upon legal and competent testimony in the case.

(Syllabus by Stewart, C.)

Error from District Court, Oklahoma County; John W. Hayson, Judge.

Action by Mrs. Beulah Fitch against C. A. Becker and others. Judgment for plaintiff, and defendants bring error. Reversed, with instructions.

Ames, Chambers, Lowe & Richardson, for plaintiffs in error.

Geo. H. Giddings, E. J. Giddings, and J. T. Dortch, for defendant in error.

Opinion by STEWART, C. The parties will hereinafter be styled as they were in the court below as plaintiff and defendant. The plaintiff sought to recover from the defendants the sum of $253, and interest, for money alleged to belong to the plaintiff, to come into possession of the plaintiff's husband, Harry Fitch, and be lost by her said husband in a turf exchange or poolroom conducted by the defendants in Oklahoma City, by means of certain bets and wagers made by the said Harry Fitch on horse races, which bets, it is alleged, were made with the defendants in such place of business. The issues were joined, and upon trial the jury returned a verdict in favor of the plaintiff and against the defendants for the sum sued for, and the court accordingly rendered judgment. Motion for a new trial was duly filed and overruled, and defendants duly appeal to this court.

There is no doubt as to the legal proposition that a third person whose money has been lost by another at gambling may recover the same in an action at law against the person or persons winning and receiving the same. Those conducting a gambling institution, either as principals or as agents, where money of a third person is thus lost, are liable in such action to the extent of the money lost and received. Unquestionably the transaction described in the petition by means of which it is alleged the money was lost is gambling. The petition states a cause of action.

It is contended by the defendants that they were entitled to an instruction to the effect that the conducting of an exchange upon which bets are made on foreign races was not a violation of the statutes of Oklahoma at the time named in the petition. It is not necessary for us to determine whether such business was at the time a violation of an express statute. It was contrary to good morals and sound public policy, and, if the allegations are supported by the evidence, the plaintiff is entitled to recover. There are, however, two questions presented in the brief of defendants which we think worthy of serious consideration. One concerns the admission of hearsay testimony, and the other the sufficiency of the evidence to sustain the verdict of the jury.

The defendants demurred to the evidence offered by plaintiff. The demurrer was overruled with exceptions, and defendants rested their case. In addition to her own testimony, the plaintiff used as witnesses Frank Owen and the defendants Keisel and Becker. The evidence may be summarized as follows:

The plaintiff testified that she and her husband for a number of years had been traveling from place to place, the business of her husband being that of preparing time-tables for railroad men, and incidentally procuring advertisements in connection with such time-tables; that they had been in Oklahoma City for a short time; that the plaintiff had something more than $260 of her own money, which she stated she had earned by dressmaking; that she furnished her husband at three separate times the following amounts: $50, $30, and $35—making a total of $115, which money was to be used by her husband in payment of doctor bills, printing, and other necessities; that shortly after furnishing her husband with this money her husband took from her trunk $140; that she did not miss the money at the time it was taken, and did not know that her husband had taken the money until she found out that he had been gambling. She gave no competent testimony showing that her husband took the $140, and, so far as the record shows, the statement that her husband took the money was merely her opinion based upon no actual knowledge of the taking. Her testimony shows that she had no actual knowledge of his gambling; the only information she had coming from statements of her husband and others. She testified that on one occasion he came to

their room in the hotel, sat down on a chair, and said, "I have lost all of my money;" that he threw down a lot of tickets, which tickets, over the objection of the defendants, were offered in evidence as Exhibits 1 to 39, inclusive. The court, on motion of the defendants, properly excluded the above statement of her husband in which he said that he had lost all of his money, as being hearsay. Two of the tickets introduced in evidence appear to be issued by a hotel, and have no connection with the matter in controversy. Exhibit 2, which is a fair sample of the form of the tickets urged to be material, reads as follows:

"K.　　　　O. K. Brokerage & Com. Co.
　　　　　　"C. A. Becker.
　　　　"Oklahoma City, Okla.
"B.　Chilton (3).
　"　2½-½.　"

Plaintiff testifies that after the act of her husband in throwing down the tickets she talked to the defendant Oates and told him that her husband had lost her money, and that her husband was not responsible more than half the time; that she asked Oates if he did not think he could give the money back, and that Oates refused to do so; that afterwards she talked to the defendant Keisel and that he told her to talk to Becker; that Keisel said: "Well I guess that none of us are afraid of you. You do not need to think that any of us are running from you." She further testified that she asked Oates if he did not know Harry (meaning her husband) had lost some money there, and that Oates admitted that he knew him; that she further said to Oates, "You know that you and Mr. Keisel are running this place," and that Oates first said that Mr. Becker was running it, and she said, "Well, then, you are going to pay back this money of mine;" that Oates replied that they were not going to do anything at all, were not going to give back any money, and told her to go ahead and do what she could; that she told Oates the money was hers, and that Harry was not responsible all of the time, and Oates said that he did not see it that way, and for her to go ahead and do what she liked, they were not afraid of her. She further testified that Keisel arranged at one time to meet her at the Bristol Hotel and talk with her; that she waited two or three hours, and that Keisel did not appear; that she talked to Keisel over the telephone, and he said, "Well if Mr. Fitch lost his money, he was over 21 years old, and was able to take care of himself," and that he was not going to give any money back lost by a grown-up man, and that he further said that if anyone had lost any money and

was 21 years old and had gambled their money away, he was not going to have anything to do with it. She testified that she did not consent to her husband using the money in "playing the ponies," or gambling; that at one time she asked Oates if he did not know that Harry had lost some money there, and he said, "Yes, he knew that."

The next witness introduced by the plaintiff was the defendant Keisel, who merely testified to the handwriting on the tickets introduced and to some irrelevant matters concerning the ownership of the Bristol Hotel. He was not asked concerning any money bet or lost by Harry Fitch, and did not give testimony in such respect.

The plaintiff then introduced the deposition of Frank Owen, who testified that he was a cook, had been living in Oklahoma City, but was removing to Ardmore; that he knew Harry Fitch, had met him at the Stag Pool Hall, conducted by the defendants. He described the arrangements in the interior of the pool hall, and testified that a turf exchange was operated there for the purpose of betting on horse races. He explained to some extent, how such bets were made and the way the business was conducted; said that he had made and won bets there; that he had seen Harry Fitch at one time put up his watch and $10 and bet on the races, and that tickets such as had been introduced in evidence were issued to those making the bets; that he had seen Fitch make bets about fifteen times, had seen him make three or four a day; that he had seen him there four days; that he did not know how much he had bet in those three or four days except what Fitch told him that he lost. Over the objection of the defendants, the testimony of this witness was admitted by the trial court to the effect that Fitch had told him that he had lost $20 one day and $50 another day; the defendants saving exceptions.

The next witness offered was the defendant Becker, who testified that the O. K. Brokerage & Commission Company sold pools on foreign races; that when they got returns on the foreign races they received a commission and they paid the bets of those who won; that Oates and Keisel were interested with him in the business, that he recognized Keisel's handwriting, and also that of Oates, on some of the tickets shown him which had been introduced in evidence; that he had given Fitch at one time an advertisement to be placed in a book being prepared for the railroad men; that he had paid Fitch for the advertisement; that in the turf exchange conducted by defendants, on the presentation of a ticket by the holder, in case the holder

won, the same was paid by defendants, but that tickets were not returned unless the holder won.

The foregoing is a substantial statement of the testimony in the most favorable light toward the plaintiff.

There is no competent evidence that Fitch ever received more than $115 of plaintiff's money. The fact that the plaintiff missed $140 from her trunk in a room at the hotel does not tend to prove her husband took the same. The plaintiff testifies she delivered to Fitch $115; hence his receiving such sum may be considered as established by the evidence, and if there is proof that any of such amount was lost by him in the gambling institution conducted by the defendants, the plaintiff would be entitled to recover from defendants to the extent of the amount so lost. It has been suggested by counsel in one of the briefs, by way of surmise, that the figures in parenthesis on each of the tickets introduced in evidence may represent bets made in each particular instance. The tickets on their face do not purport to show any money bet or lost, and no testimony was introduced explaining their meaning. Assuming that they were admissible in evidence in the first instance, and that the experience of counsel is sufficient to give weight to the surmise ventured, we find the total sum of the parenthetical numbers to be 105. If, then, the possession of the tickets by Fitch shows that the bets were lost, as claimed by counsel for plaintiff, Fitch lost only $105. In order for plaintiff to recover this amount, there should be evidence tending to show that the money lost belonged to plaintiff. We cannot speculate as to what the tickets represent. The courts do not take judicial notice of the meaning of signs and characters used by the gambing profession. The plaintiff called to the stand two of the defendants, who identified the tickets as those used in their business, but they were not asked to explain their meaning. Such proof should have been made in some manner. In order for the plaintiff to recover. it is necessary that there be some evidence to show that Fitch lost money belonging to the plaintiff, without her consent or connivance, by bets or wagers made on horse races in the turf exchange conducted by the defendants, and that the defendants received the money either for themselves or their principal. There should also be evidence to show the amount lost.

There is no competent evidence in the record showing that Harry Fitch ever bet or lost any definite or even approximate sum of money except $10 of his own for which he pawned his watch. Oates admitted that Fitch lost some money, but there is no competent testimony as to what amount or to whom the money belonged. In the absence of evidence to the contrary, the presumption is that Fitch lost his own money.

It is apparent that there is not sufficient evidence to sustain the verdict for the amount awarded, and there is slight, if any, evidence to support a verdict in any sum, but it will not be necessary to pass upon this question, as this case must be reversed and a new trial ordered because of error in the admission of testimony. The witness Owen testified that Fitch told him that he had lost $20 at one time and $50 at another. Proper exceptions were reserved by defendant to the action of the court in admitting this testimony. We cannot conceive upon what theory the court admitted this purely hearsay evidence. We may add here that the policy of this court to disregard errors not prejudicial is not intended as a grant of license to trial courts to trample under foot and wholly disregard established procedure and rules of evidence meant for the protection of all citizens alike.

The duty rests upon trial courts to conduct trials in accordance with law, and not to experiment as to how many rules may be violated without committing prejudicial error. The example of the wayward schoolboy who attempts to gauge with precision just what infractions of discipline will be indulged by the teacher without invoking the rod of chastisement ought not to be followed by trial courts. The evidence is not only incompetent, but its admission in connection with the weakness of plaintiff's proof is prejudicial. The undisputed evidence in this case shows that the defendants were engaged in an immoral and unlawful business which should be suppressed. The law provides ample means to suppress the business and punish the culprits. We would not discharge our duty if we permitted any citizen, even a gambler, to be deprived of property except in a manner authorized by law.

The judgment of the trial court is reversed, with instructions to grant the defendants a new trial and proceed otherwise in a manner not inconsistent with this opinion.

By the Court: It is so ordered.