[Crim. No. 1017.   Second Appellate District, Division Two.—November 10, 1923.]

THE PEOPLE, Respondent, v. WILLIAM HINKLE, Appellant.

[1] CRIMINAL LAW—RECORDING BETS UPON RESULT OF HORSE-RACE— NATURE OF PAPERS SEIZED—EXPERT TESTIMONY.—In this prosecution for a violation of subdivision 2 of section 337a of the Penal Code—occupying a room with papers for the purpose of recording bets upon the result of a contest of speed between horses—the experience acquired by the arresting officers in ferreting out offenders engaged in violating the provisions of that act was sufficient to establish *prima facie* their competency to testify that the two papers which they took from defendant were, respectively, a register of bets and a bookmaker's chart, and were such papers as ordinarily are used by bookmakers; and they were properly permitted to testify to the meaning and significance of the cryptic letters and figures which were written on those documents.

[2] ID.—QUALIFICATION OF EXPERT — DISCRETION OF TRIAL COURT.— Whether or not the qualification of a witness with respect to knowledge or special experience is sufficiently established is a matter resting largely in the discretion of the trial court, and its determination of the matter will not be overturned on appeal unless there be an actual want of evidence to support it or a clear abuse of discretion in ruling upon the evidence given on the subject.

[3] ID.—ACTS DENOUNCED—OCCUPATION OF ROOM FOR RECORDING BETS —PROOF.—Under subdivision 2 of section 337a of the Penal Code the offense is complete when it is shown that the accused occupied a room or inclosure with a paper for the purpose of recording a

bet or bets on the result or purported result of any horse-race or purported horse-race, and it is not necessary to show that a horse-race was actually run or that a bet was actually made.

[4] ID.—EVIDENCE—POSSESSION OF PAPER USED FOR RECORDING BETS —CONDUCT OF DEFENDANT AT TIME OF ARREST.—In this prosecution for a violation of subdivision 2 of section 337a of the Penal Code the evidence of the arresting officers warranted the jury in finding that at least one of the papers in defendant's possession was such as is ordinarily used for the purpose of recording bets on horse-races; and the possession of such paper, when considered in the light of defendant's conduct immediately prior to and at the time of his arrest, fully warranted the jury in inferring that he was occupying his cigar-store with such paper for the purpose of recording bets on the result of a contest of speed between horses.

[5] ID.—QUALIFICATION OF EXPERT—EXAMINATION BY OPPOSING PARTY —TIME.—Whether an opposing party shall be accorded permission to test the qualifications of an expert by a preliminary cross-examination before the witness states his opinion, or whether the privilege of testing the witness' competency shall be exercised on his regular cross-examination after he has given his opinion and has concluded his direct examination, involves not a matter of right but a question of procedure which lies within the discretionary power of the trial court.

APPEAL from a judgment of the Superior Court of San Diego County. S. M. Marsh, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wright & McKee for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

FINLAYSON, P. J.—By an information containing three counts defendant was charged, in the first count, with the crime of occupying a room with papers for the purpose of recording bets upon the result of a contest of speed between horses—the offense defined in subdivision 2 of section 337a of the Penal Code. In the second and third counts he was charged, respectively, with the offenses defined in subdivisions 3 and 4 of the section. The jury returned a verdict of guilty on all three of the counts. A new trial was granted as to counts two and three. The appeal is from the

judgment of conviction on count one and from the order de-
nying defendant a new trial on that count.

The facts, in brief, are as follows: Defendant was the
proprietor of a cigar-store on the ground floor of a building
fronting on a street in the city of San Diego. At the time
mentioned in the information two San Diego police officers,
while driving in an automobile along the street on which
the store faced, saw two men inside defendant's premises.
These two persons were seen standing in front of the cigar
counter engaged in conversation with defendant. One of
the men was leaning over the counter. As the officers rode
by they observed defendant writing on a pad of paper which
lay on the counter. This document, later taken from de-
fendant's person by one of the officers, was, so the officers
testified, a "register of bets"—a document ordinarily used
by bookmakers for the purpose of recording bets on horse-
races. As the officers passed the store they observed an-
other man, an employee of defendant, whom the officers
referred to in their testimony as the "lookout." He was
standing at the door which led into defendant's store. Ob-
serving these things the officers hurriedly parked their auto-
mobile near by and immediately returned to defendant's
place of business. As they entered, defendant's employee—
the person whom the officers previously had observed stand-
ing in the doorway—turned toward defendant and exclaimed,
"Look out!" By that time the two men whom the officers
had seen in the store talking with defendant while the latter
was writing on the pad of paper had moved from the spot
where they had stood in front of the cigar counter and were
then standing on the sidewalk in front of the store. Defend-
ant was telephoning when the officers entered the store.
Between the time when the officers first observed defendant
as they drove by and the time when they walked into the
store—a brief period, not exceeding two minutes—defend-
ant had taken from the cigar-stand the pad of paper—the
document which was described by the officers as a "register
of bets"—and had folded it and put it in his pocket. One
of the officers demanded that he surrender it. Defendant
refused to hand it over. Whereupon the officer forcibly took
the document from him. Referring to this incident, the offi-
cer testified: "I came in and he took it [the register of
bets] up off the counter, folded it up and started to put it

in his pocket, and he started backing away from me and would not give it to me, so I backed him up against the wall and took it away from him.'' Defendant told the officers that he had just made two bets and was sending the paper to the race-track at Tia Juana. At the same time the officers took from defendant, or from under his cigar counter, another document which they described as a ''bookmaker's chart.''

[1] Appellant claims that the court erred in permitting the arresting officers to testify that the two papers which they took from him were, respectively, a register of bets and a bookmaker's chart, and are such papers as ordinarily are used by bookmakers. The officers were qualified by experience to give expert testimony. Long prior to the time when they arrested appellant they had been specially detailed to work on cases of this character. Their duties often took them to the race-track at Tia Juana, where, as well as in the haunts of the bookmakers pursuing their calling in the city of San Diego, they had made a study of race-track gambling and its *modus operandi.* They had acquired experience in ferreting out offenders engaged in violating the provisions of this act. As a part of their duties they had familiarized themselves with the papers, books, and paraphernalia ordinarily used by bookmakers. They had acquired some special knowledge of a subject which is not within the common experience of mankind generally. They possessed a knowledge which ordinarily does not come within the ken of the average member of a mixed jury of men and women—the juror who has moved in only the routine walks of an exemplary life and has not permitted his feet to wander into the forbidden byways frequented by the gamester. The experience thus gained by the officers was clearly sufficient to establish *prima facie* their competency to give expert testimony as to the character of the documents which they had taken from appellant, as well as to the significance of the cryptic letters and figures which were written on those documents. (See *Vallejo etc. R. R. Co.* v. *Reed Orchard Co.,* 169 Cal. 570, 571 [147 Pac. 238], and *Miller* v. *State,* 9 Okl. Cr. 255 [L. R. A. 1915A, 1088, 131 Pac. 717].) The extent of the special knowledge acquired by these officers went to the weight of their testimony rather than to its admissibility. In *State* v. *Wolfley,*

75 Kan. 406 [12 Ann. Cas. 412, 11 L. R. A. (N. S.) 87, 89 Pac. 1046], it is said: "There was no error in allowing opinions to be given regarding the inferences to be drawn from the appearance of cattle brands, even by witnesses whose experience was not such as to enable them to speak with authority, for they had some special training in the matter—the extent of it went to the weight, rather than to the admissibility, of their testimony." (See, also, 22 Corpus Juris., p. 522, sec. 607.) **[2]** Whether or not the qualification of a witness with respect to knowledge or special experience is sufficiently established is a matter resting largely in the discretion of the trial court, and its determination of the matter will not be overturned on appeal unless there be an actual want of evidence to support it or a clear abuse of discretion in ruling upon the evidence given on the subject. (*Vallejo etc. R. R. Co.* v. *Reed Orchard Co., supra.*)

Not only were the arresting officers qualified by experience to give expert testimony, but the nature of the documents taken from appellant's possession was such as to call for opinion evidence to explain their hidden meaning. Courts do not take judicial notice of the meaning of the signs and characters used by horse-race gamblers. Neither the judge nor the jury could properly speculate upon what was the peculiar significance to be given·to the cabalistic letters and figures which appeared on the papers taken from appellant, or what meaning they would convey to the minds of men instructed in the bookmakers' school. But while these characters was a concealed mystery to the uninitiated, they were as an open book to those who, by their study of the methods and instrumentalities employed by bookmakers, had been inducted into the arcana of the gambler's craft. It was therefore proper to permit the officers to explain to the jury the nature and character of the papers taken from appellant and to state what, in their opinion, is the peculiar significance attaching to the letters and figures which appeared on these two exhibits. (*State* v. *Gaines,* 32 R. I. 462 [79 Atl. 1107]; *People* v. *Sutherland,* 59 Cal. App. 462 [210 Pac. 965]; *People* v. *Emerson,* 5 N. Y. Supp. 374; sec. 1863, Code Civ. Proc. See, also, *State* v. *McKone,* 31 N. D. 547 [154 N. W. 256]; *State* v. *Rothschild,* 19 Mo. App. 137; *State* v. *Wetherell,* 70 Vt. 274 [40 Atl. 728]; *Becker* v. *Fitch,* 66 Okl. 57 [2 A. L. R. 340, 167 Pac. 202];

*McGarity* v. *State,* 151 Ark. 423 [236 S. W. 611]; *McGuffin* v. *State,* 156 Ark. 392 [246 S. W. 478].)

[3] The evidence is sufficient to justify the verdict. It was not necessary to show that a horse-race was actually run. (*People* v. *Carroll,* 54 Cal. App. 684 [202 Pac. 885].) Nor was it necessary to show that a bet was actually made. An offense of the character charged in the first count of this information—the offense defined in the second subdivision of section 337a—is complete when it is shown that the accused occupied a room or inclosure with a paper for the purpose of recording a bet or bets on the result or purported result of any horse-race or purported horse-race. It is the occupancy of a room with a paper for the purpose of recording such bets, not the actual making of the bets, which constitutes the offense denounced by this subdivision of the code section. [4] Here the evidence of the arresting officers warranted the jury in finding that at least one of the papers in appellant's possession was such as is ordinarily used for the purpose of recording bets on horse-races. The possession of such a paper, when considered in the light of appellant's conduct immediately prior to and at the time of his arrest, fully warranted the jury in inferring that he was occupying his cigar-store with this paper for the purpose of recording bets on the result of a contest of speed between horses. It is hardly to be supposed that one innocently in possession of such a paper would seek to conceal it from the police officers, as defendant did. The circumstances of the case point unerringly to the conclusion that appellant had the paper in his possession for the unlawful purpose defined by the act. That the paper was in a room occupied by him is not disputed. Every element of the offense was, therefore, sufficiently established.

[5] While it may be the better rule to allow cross-examination of an expert as to his competency before he gives his opinion, it was not error, certainly not reversible error, to refuse appellant's counsel permission to cross-examine the police officers as to their qualifications before they were permitted to give their opinion evidence. On regular cross-examination, after the witness has completed his direct examination, his competency as an expert can be tested. That was the procedure which the court enforced in the instant case. Such cross-examination, conducted after

each officer had concluded his direct examination, did not affect in any material degree the evidence which the witness had given on his direct examination respecting his competency. Whether an opposing party shall be accorded permission to test the qualifications of an expert by a preliminary cross-examination before the witness states his opinion, or whether the privilege of testing the witness' competency shall be exercised on his regular cross-examination after he has given his opinion and has concluded his direct examination, involves, not a matter of right but a question of procedure which lies within the discretionary power of the trial court. (*Finch* v. *Chicago etc. Ry. Co.*, 46 Minn. 250 [48 N. W. 915]; *City of Fort Wayne* v. *Coombs*, 107 Ind. 75 [57 Am. Rep. 82, 7 N. E. 743]; *Sarle* v. *Arnold*, 7 R. I. 582; *In re Gorkow's Estate*, 20 Wash. 563 [56 Pac. 385].)

We have examined the record with care and have found no substantial ground for complaint against the manner in which the case was tried by the court below. In other words, we have found no prejudicial error.

The judgment and the order denying a new trial are affirmed.

Works, J., and Craig, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 7, 1924.

All the Justices concurred.