Filed 3/3/22  P. v. Canty CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　　　v.<br><br>HENRY JAMES CANTY,<br><br>　　　Defendant and Appellant. | F081029<br><br>(Super. Ct. No. 19CMS-4948)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Michael J. Reinhart, Judge.

Sangeeta Sinha, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Kevin L. Quade, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION AND BACKGROUND

The District Attorney of Kings County filed an amended information on March 3, 2020, charging defendant Henry James Canty with felony driving under the influence of an alcoholic beverage (Veh. Code, § 23152, subd. (a); count 1), driving while having 0.08 percent or more, by weight, of alcohol in his blood (Veh. Code, § 23152, subd. (b); count 2), and, as to both counts, alleging defendant did so within 10 years of conviction for a similar offense (Veh. Code, §§ 23550, 23550.5) and after serving two prior prison terms (Pen. Code, former § 667.5, subd. (b)).[1]

After a two-day trial, the jury convicted defendant of both charges. Defendant waived a jury determination of his prior convictions and the trial court found the prior conviction allegations to be true.

On April 1, 2020, the trial court denied probation and sentenced defendant to the upper term of three years in prison as to both counts but stayed the term as to count 2 pursuant to former section 654.[2] The court determined that defendant did not have the ability to pay any penal fines but imposed a $300 restitution fine (former § 1202.4, subd. (b)), a suspended $300 mandatory revocation restitution fine (§ 1202.45, subd. (a)), an aggregate $80 court operations assessment (§ 1465.8), an aggregate $60 criminal conviction assessment (Gov. Code, § 70373), a $129 booking fee (former Gov. Code,

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     Effective January 1, 2020, Senate Bill No. 136 (2019–2020 Reg. Sess.) amended section 667.5, subdivision (b) to limit application of prior prison term enhancements to only prior prison terms that were served for sexually violent offenses as defined by Welfare and Institutions Code section 6600, subdivision (b). (Stats. 2019, ch. 590, § 1.) That amendment applied retroactively to all cases not yet final on Senate Bill No. 136's effective date. (*People v. Lopez* (2019) 42 Cal.App.5th 337, 341–342, citing *In re Estrada* (1965) 63 Cal.2d 740, 742.) As defendant's prior convictions were for driving under the influence, former section 667.5, subdivision (b) did not apply to defendant's case. Although not mentioned in the record, this explains why defendant was not sentenced to an enhanced one-year term as alleged in the amended information.

§ 29550.2), and a $25 release after booking fee (former Pen. Code, § 1463.07). Defense counsel did not object to the fines, fees, or assessments.

This timely appeal followed on April 2, 2020.

Defendant contends on appeal that (1) the trial court erred in admitting expert opinion testimony by a witness whom the prosecution failed to formally proffer as an expert; and (2) the trial court violated due process by failing to determine defendant's ability to pay before imposing fines, fees, and assessments.

We note that as of July 1, 2021, the fees assessed pursuant to former Penal Code section 1463.07 and former Government Code section 29550.2 are no longer enforceable, and we will vacate any unpaid portion of those fees. (Pen. Code, § 1465.9, subd. (a); Gov. Code, § 6111, subd. (a).) As modified, we affirm the judgment.

**FACTS**

California Highway Patrol Officer Kenneth Bird stopped defendant on October 18, 2017, at 6:20 p.m., after noticing that defendant stopped at a stop sign at an intersection longer than usual for the average person. Upon contacting defendant, Officer Bird detected the smell of alcohol on defendant's breath and asked defendant if he had been drinking. When defendant admitted he had been drinking, Officer Bird asked defendant to exit the vehicle. During questioning, defendant advised the officer that he had last eaten at 2:00 p.m., had 2 four-ounce drinks of gin commencing at 2:30 p.m., and stopped drinking at approximately 5:40 p.m. After administering several field sobriety tests, Officer Bird concluded that defendant was under the influence of alcohol and arrested him. During the horizontal gaze nystagmus test, Officer Bird observed that defendant's eyes failed to track the officer's finger smoothly, commenced shaking before his finger was at a 45-degree angle from defendant's eye, and shook when tracking the officer's finger to the extreme edges. During another test, defendant could not stand on one leg for longer than 24 seconds and had to use Officer Bird's car for balance. Defendant also swayed while performing the Romberg test, requiring him to stand with his eyes closed

3.

and head back, and failed to accurately estimate the 30 seconds he was required to hold the pose. Finally, defendant could not follow instructions in performing the finger count test.

Defendant agreed to permit his blood to be drawn for testing. A phlebotomist drew blood from defendant at approximately 7:26 p.m. Sarah Stevens, a senior criminalist with the Department of Justice, testified that she tested defendant's blood for alcohol content and concluded that defendant's blood-alcohol content (BAC) was 0.088 percent weight per volume at the time his blood was drawn. Taking into account any variability in the measurement process, Stevens was 99.73 percent confident that defendant's BAC was between 0.084 and 0.092 percent.

Senior Criminalist Michael Appell, employed by the Department of Justice, testified as an expert in interpretation of alcohol and how it affects the human body. After testifying to his training and experience, Appell testified that in his opinion, an individual's ability to safely operate a motor vehicle diminishes the more alcohol that individual consumes. Nobody is safe to drive a motor vehicle when they have a BAC of 0.08 percent or more. While an individual may build up a tolerance to alcohol, such a tolerance serves only to mask the effects of alcohol but does not lessen the impairment.

Appell testified that if provided an individual's sex and weight, he could determine the quantity of a particular proof alcohol that would have to be present in a person's system to produce a particular BAC. Appell described the "Widmark formula" and his training in its use to make that determination. He received this training at the start of his career and has used it in the course of his employment since that time. Over defense objection, Appell testified that for a 170-pound man who is six feet tall to have a BAC of 0.088 percent instantaneously, he would have to have one ounce of 80 proof liquor (40 percent alcohol by volume), 48 ounces of beer (4.7 percent alcohol by volume), or 32 ounces of wine (12 percent alcohol by volume).

To determine an individual's BAC at an earlier point in time based upon their BAC at a later point in time, Appell needed to know when the drinking started and stopped and if there was food in the individual's stomach. The calculation also required assuming the alcohol was fully absorbed into their system, which usually occurs 15 to 20 minutes after drinking but could take as long as an hour. Appell testified that assuming the alcohol was fully absorbed by 6:20 p.m., the man had a BAC somewhere around 0.10 percent at 6:20 p.m. A man with a BAC of 0.088 percent at 7:26 p.m., who stopped drinking at 5:40 p.m., would have had to drink more than 2 four-ounce drinks of gin. Finally, Appell opined that an individual who performed field sobriety tests as defendant did, with a BAC of 0.088 percent, could not safely operate a vehicle.

After the prosecutor rested, defense counsel played the video of the traffic stop and defendant performing field sobriety tests to the jury before resting.

## DISCUSSION

I.      *The trial court did not abuse its discretion in permitting Appell to testify to his opinion as an expert witness.*

### A.      Background

At the outset of Appell's testimony, he described one of his duties as testifying regarding "the interpretation of alcohol and how it affects the human body." He described his training and experience, which included a bachelor of science degree before commencing his training and 19-year employment with the Department of Justice. Appell participated in a 40-hour forensic alcohol training in 2004. His training included correlation studies of people imbibing alcohol, observing their performance of field sobriety examinations, and determining BAC. Appell reviewed more than 200 research articles and qualified approximately 170 times as an expert in blood-alcohol analysis and the physiological effects of alcohol in the human body.

After describing this experience, and upon questioning by the prosecutor, Appell testified that, in his opinion, an individual's ability to safely operate a motor vehicle

diminishes the more alcohol that individual consumes. Appell further testified, without objection, that an individual with a BAC of 0.08 percent cannot safely operate a vehicle. While an individual may build up a tolerance to alcohol, such a tolerance serves only to mask the effects of alcohol but does not lessen their impairment. Appell described at length how an individual with a BAC of 0.08 percent would be first mentally impaired, although not necessarily observably so, and then would suffer physical impairments. Defense counsel did not object to this questioning regarding Appell's opinion.

Appell testified that he could determine the amount of alcohol that would have to be present in a person's system to produce a particular alcohol content. Defense counsel objected when the prosecutor asked Appell to describe the formula he used to make that determination, "There's no foundation been laid [*sic*] for that expert type of testimony." The trial court responded, "Right now, it's overruled. All [the prosecutor is] asking is what formula [Appell] uses." Appell described the "Widmark formula" and his training in its use to make that determination. He received this training at the start of his career and has used it in the course of his employment since that time.

The prosecutor then posed a hypothetical to Appell, asking him what amount of alcohol would have to have been present in a man's system, who is six feet tall and weighing 170 pounds, to produce a BAC of 0.088 percent. Defense counsel objected, "Lack of foundation." The trial court overruled the objection as the question was a hypothetical. Defense counsel replied, "Right, which he hasn't qualified as an expert, yet. I would like to be given an opportunity to voir dire on that."[3] The trial court denied the request and commented that defense counsel could cross-examine Appell on that issue.

---

**3**     Defense counsel's objection is unclear as to whether he objected to Appell's qualification as an expert generally or to Appell's expertise in extrapolating an individual's BAC at an earlier time from the BAC determined at a later time.

Thereafter, Appell provided his opinion regarding the amount of alcohol that would produce a BAC of 0.088 percent instantaneously in a man who weighed 170 pounds, and his opinion that such a man with a BAC of 0.088 percent at 7:26 p.m. would have had a BAC of 0.10 percent at 6:20 p.m. Appell also opined that an individual with a BAC of 0.088 percent, who performed field sobriety tests as defendant did, could not safely operate a vehicle.

Defense counsel cross-examined Appell on his qualifications, highlighting training included on Appell's resume that did not relate to blood-alcohol analysis. Acknowledging that he had failed to update his resume, Appell testified his most recent training occurred in 2019, when he was involved in providing training during a correlation study, using retrograde analysis, and observing the effect of alcohol on a person's ability to perform divided attention tasks. Appell received formal training during a 40-hour forensic alcohol course in 2004. Appell also published his correlation study in a peer magazine. He continually reviewed new publications concerning driving under the influence research and blood-alcohol analysis. In response to defense counsel's questioning, Appell testified that after imbibing alcohol, an individual's BAC will increase quickly, peaking at approximately 20 minutes, although it could take as long as an hour. Once the alcohol is full absorbed, the individual will go through elimination, "the downside of that curve." The process of elimination takes longer.

Defense counsel concluded his cross-examination of Appell but did not raise any further objection to the expert testimony nor move to strike the testimony.

### B.    Standard of Review and Law

" 'The trial court has broad discretion in deciding whether to admit or exclude expert testimony [citation], and its decision as to whether expert testimony meets the standard for admissibility is subject to review for abuse of discretion.' " (*People v. Jones* (2013) 57 Cal.4th 899, 946.) Under the abuse of discretion standard, we disturb the trial

court's ruling only if the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Clark* (2016) 63 Cal.4th 522, 572.) "Error regarding a witness's qualifications as an expert will be found only if the evidence shows that the witness ' " '*clearly lacks qualification as an expert.*' " ' " (*People v. Farnam* (2002) 28 Cal.4th 107, 162.)

When a party objects to an expert witness's qualifications, Evidence Code section 720 requires the party offering the expert testimony to demonstrate the expert's special knowledge, skill, experience, training, or education before the witness may testify as an expert. (*People v. Townsel* (2016) 63 Cal.4th 25, 45.) "Whether a person qualifies as an expert in a particular case … depends upon the facts of the case and the witness's qualifications." (*People v. Bloyd* (1987) 43 Cal.3d 333, 357.) " 'When a preliminary showing is made that the proposed witness has sufficient knowledge to qualify as an expert under the Evidence Code, questions about the depth or scope of his or her knowledge or experience go to the weight, not the admissibility, of the witness's testimony.' " (*People v. Jackson* (2016) 1 Cal.5th 269, 327–328.)

### C. Analysis

#### 1. Forfeiture.

As an initial matter, we find that defendant has forfeited his objection to Appell's qualifications. Although the prosecution was not required to establish Appell's expert qualifications in the absence of an objection from the defense (see Evid. Code, § 720, subd. (a); *People v. Rodriquez* (1969) 274 Cal.App.2d 770, 776), such a foundation was nonetheless established during Appell's direct examination and prior to defense counsel's objection. Defense counsel did not object until after Appell had given several expert opinions. An objection to or a motion to strike evidence must be timely made. (Evid. Code, § 353, subd. (a).) A party's belated objection to an expert witness's testimony will preclude a claim of error in the admission of the expert's opinion. (*Pineda v. Los Angeles*

8.

*Turf Club, Inc.* (1980) 112 Cal.App.3d 53, 60–61; see *People v. Farnam*, *supra*, 28 Cal.4th at pp. 161–162 [the defendant forfeited claim that expert was not qualified to testify about blood splatter evidence and crime scene reconstruction when he objected only to expert's "qualifications with respect to estimating the amount of time elapsing from the start to the finish of the attack on the victim"].)

Upon belated objection by defense counsel, the trial court said that defense counsel could question Appell about his qualifications during cross-examination. Such procedure was within the trial court's discretion. (*People v. Hinkle* (1923) 64 Cal.App. 375, 380–381.) After cross-examination, defense counsel did not renew his objection to Appell's testimony or move to strike the testimony. By failing to move to strike, defendant did not allow the trial court to address any alleged error. Defendant thereby forfeited his claim of error.

> 2. *The trial court found that Appell was qualified to testify as an expert.*

On appeal, defendant does not argue that Appell was unqualified to offer expert opinion. Rather, defendant objects to the procedure employed by the prosecutor and trial court to present the expert testimony. Defendant argues that the prosecutor should have formally proffered Appell as an expert to the trial court and the trial court should have formally accepted Appell as an expert before permitting expert testimony. At trial, defense counsel did not make this specific objection and defendant reads too much into his only support for the argument, *People v. King* (1968) 266 Cal.App.2d 437 (*King*).

In *King*, the defendant objected to admission of expert testimony regarding voice identification that the trial court admitted over defense objection because the trial court held that the jury should determine the reliability of the scientific method. (*King*, *supra*, 266 Cal.App.2d at pp. 459–460.) The court, in setting forth the applicable law, cited California Criminal Law Practice, Continuing Education of the Bar, section 14.19,

9.

page 593,[4] which described that the court should permit the opposing party to voir dire the expert on his qualifications, after which the trial court determines whether the expert can testify. (*King*, at p. 444.) However, though finding the trial court erred in permitting the jury to determine whether a scientific method had received general acceptance to justify admission in evidence, the court did not discuss the Continuing Education of the Bar procedure or hold that it was the only way in which a trial court could execute its duties under Evidence Code section 720. (*King*, at p. 444.) Neither Evidence Code sections 720 nor 801, both addressing expert testimony, limit the trial court to a specific procedure in executing its gate-keeping duties regarding expert testimony. Defendant has failed to cite any authority for the proposition the trial court must explicitly recognize the witness as an expert before overruling an objection to admission of such testimony.

In addition, since *King* was decided in 1968, several authorities recommend against even using the term "expert" at trial:

> "Having decided that a witness is qualified to testify as an expert, many courts announce to the jury that it recognizes the witness as an expert. But why? Why not just allow counsel to propound questions that call for an opinion and permit the expert to rely on inadmissible information and to do the other things that experts but not lay witnesses may do? There is little justification for counsel to tender the witness to the court as an expert and for the court to announce that it is accepting or rejecting this tender offer. Only Justice Holmes's observation that '[m]ost of the things we do, we do for no better reason than that our fathers have done them or that our neighbors do them' explains the prevalence of the practice.

> "Fortunately, the practice is not universal. The Federal Rules Advisory Committee noted that 'there is much to be said for a practice that prohibits the use of the term "expert" by both the parties and the court at trial. Such a practice "ensures that trial courts do not inadvertently put their stamp of authority" on a witness's opinion .… The National Commission on Forensic Science overwhelmingly adopted the same view. The ABA Civil Trial Practice Standard is similar. A substantial number of courts

---

**4** A parenthetical providing the publisher and publication year was not included in the citation.

follow this salutary approach.  (Kaye et al., The New Wigmore:  Expert Evidence (2022 supp.) § 3.6, fns. omitted.)

The trial court's decision to deny defense counsel's request for voir dire and defer such questioning until Appell's cross-examination was within the trial court's discretion. (*People v. Hinkle*, *supra*, 64 Cal.App. 375 at p. 381 ["Whether an opposing party shall be accorded permission to test the qualifications of an expert by a preliminary cross-examination before the witness states his opinion, or whether the privilege of testing the witness'[s] competency shall be exercised on his regular cross-examination after he has given his opinion and has concluded his direct examination, involves, not a matter of right, but a question of procedure which lies within the discretionary power of the trial court."].)

Defendant argues that the prosecutor forfeited using Appell's testimony as expert testimony by failing to formally proffer Appell as an expert to the trial court.  We do not agree.  The prosecutor made clear that Appell was being proffered as an expert by asking questions to qualify him as such and then by asking him for his opinion based upon his training and experience.  As we have concluded, no formal proffering of the witness to the trial court was necessary.  In addition, defendant's authorities in support of his forfeiture argument are distinguishable.  In *People v. Jones* (2017) 3 Cal.5th 583, the trial court excluded opinion testimony by the defendant's witness that the defendant was no longer active in a gang.  On appeal, defendant argued the trial court erred because the testimony was admissible as expert testimony.  The California Supreme Court held that the defendant had forfeited his argument because, unlike this case, he failed to argue it as a basis for admission, affirmatively argued for admission as lay opinion testimony, and never asked questions of the witness that would demonstrate the witness as an expert. (*Id.* at pp. 636–637.)[5]  In this case, the prosecutor asked Appell questions to qualify him

---

[5]    Defendant's reliance on *People v. Valdez* (2004) 32 Cal.4th 73 is similarly misplaced.  In that case, the trial court excluded evidence that defense counsel specifically offered to challenge and undermine the police investigation of the murder and denied it was being offered to

as an expert and identified his area of expertise. Both defense counsel's objection and the trial court's ruling recognized the prosecutor was offering expert opinion.

The prosecutor asked Appell hypothetical questions customarily permitted as to expert witnesses. (See *People v. Vang* (2011) 52 Cal.4th 1038, 1046, citing 3 Witkin, Cal. Evidence (4th ed. 2000) Presentation at Trial, § 194, p. 258 [" 'The traditional method of taking the opinion evidence of an expert is the hypothetical question.' "].) When defense counsel eventually did object to Appell's testimony, arguing that he had not been qualified as an expert, the trial court impliedly found that Appell was qualified to provide his expert opinion by overruling the objection. This implied finding—which, absent record evidence to the contrary, we presume it made (see Evid. Code, § 664; *Ross v. Superior Court* (1977) 19 Cal.3d 899, 913)—was sufficient (see *Graham v. Flory* (1955) 134 Cal.App.2d 729, 732).

The trial court did not abuse its discretion in permitting expert testimony by Appell. Appell testified that he possessed a bachelor of science degree before commencing his training and 19-year employment with the Department of Justice. Appell participated in a 40-hour forensic alcohol training in 2004. In 2019, Appell trained individuals during a correlation study of people imbibing alcohol, observing their performance of field sobriety examinations, and determining BAC. Appell trained others in this area. Appell reviewed more than 200 research articles and qualified approximately 170 times as an expert in blood-alcohol analysis and the physiological effects of alcohol in the human body. Appell published his correlation study in a peer magazine. He also continued to review new publications concerning driving under the influence research and blood-alcohol analysis.

---

implicate a third party. (*Id*. at pp. 108–109.) On appeal, Valdez claimed the trial court erred because the evidence was relevant to implicate a third person. (*Id*. at p. 109.) Unlike *Valdez*, the prosecutor in this case did not offer Appell's testimony on any basis other than expert opinion, which is clear from the context of the questioning, defense counsel's objection, and the trial court's response.

We conclude that the trial court did not abuse its discretion in overruling defense counsel's objection and tacitly finding that Appell was qualified to testify about the effect of alcohol on the body, the absorption rate of alcohol, and a retrograde analysis of a hypothetical man's BAC at the time he was driving.  (See *People v. Bolin* (1998) 18 Cal.4th 297, 322 [criminalist properly relied on his educational background in biochemistry and serology and his training as a criminalist for 13 years to form his opinion about the position of the victim after the first and second fatal shots]; see also *People v. Morales* (2020) 10 Cal.5th 76, 99 [expert's lack of academic credentials did not show he clearly lacked the necessary qualifications, where the expert had "relevant on-the-job training and experience"].)  We cannot conclude that Appell was clearly unqualified to testify as an expert and questions concerning the depth of his knowledge did not affect the admissibility of his testimony.  The trial court did not abuse its discretion in admitting Appell's testimony as expert opinion.

## II.     *The trial court did not violate due process when imposing fines, fees, and assessments without determining whether defendant had the ability to pay.*

### A.     Background

The court determined that defendant did not have the ability to pay any penal fines but imposed a $300 restitution fine (former § 1202.4, subd. (b)), a suspended $300 mandatory revocation restitution fine (§ 1202.45, subd. (a)), an aggregate $80 court operations assessment (§ 1465.8), an aggregate $60 criminal conviction assessment (Gov. Code, § 70373), a $129 booking fee (former Gov. Code, § 29550.2), and a $25 release after booking fee (former Pen. Code, § 1463.07).  In so doing, the trial court rejected approximately 11 other fines, fees, or assessments as recommended by the probation officer's report that totaled approximately $1,685.  Defense counsel did not object to the fines, fees, or assessments.

13.

### B. Analysis

Defendant argues that the trial court's finding that defendant did not have the ability to pay the penal fines mandates that the additional fines and fees be stricken, or enforcement stayed, pursuant to the Court of Appeal's decision in *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). Although he did not object, defendant disputes that he forfeited the claim and, alternatively, he argues that his trial counsel rendered ineffective assistance by failing to object. The People maintain that forfeiture bars defendant's claim and defendant has failed to demonstrate his trial counsel was ineffective.

As explained below, we reject defendant's arguments against application of the forfeiture doctrine and that his counsel was ineffective.

#### 1. Forfeiture.

Defendant was sentenced in April 2020, more than 14 months after the Court of Appeal issued its decision in *Dueñas*. Thus, although defendant did not have a statutory right to object to imposition of the minimum $300 restitution fine under former section 1202.4, subdivision (b), the $80 court operations assessment under section 1465.8, or the aggregate $60 criminal conviction assessment under Government Code section 70373, the parties and the trial court had ample notice of the *Dueñas* decision.

Defendant argues that we may consider a pure question of law on undisputed facts. However, the failure to object in the trial court generally forfeits a claim on appeal, and this principle is applicable to constitutional claims. (*People v. McCullough* (2013) 56 Cal.4th 589, 593; *In re Sheena K.* (2007) 40 Cal.4th 875, 880–881.) Moreover, " 'discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue.' " (*In re Sheena K.*, at p. 887, fn. 7.) Here, as stated, defendant had ample notice prior to sentencing of the appellate decision on which he now relies to advance his constitutional claim.

### 2. *Ineffective Assistance of Counsel.*

"In order to establish a claim for ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient and that the defendant suffered prejudice as a result of such deficient performance." (*People v. Mickel* (2016) 2 Cal.5th 181, 198, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687–692.) "To demonstrate deficient performance, defendant bears the burden of showing that counsel's performance ' " ' "fell below an objective standard of reasonableness … under prevailing professional norms." ' " ' [Citation.] To demonstrate prejudice, defendant bears the burden of showing a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*Mickel*, at p. 198.)

"[C]ertain practical constraints make it more difficult to address ineffective assistance claims on direct appeal rather than in the context of a habeas corpus proceeding." (*People v. Mickel*, *supra*, 2 Cal.5th at p. 198.) "The record on appeal may not explain why counsel chose to act as he or she did. Under those circumstances, a reviewing court has no basis on which to determine whether counsel had a legitimate reason for making a particular decision, or whether counsel's actions or failure to take certain actions were objectively unreasonable." (*Ibid.*) "Moreover, we begin with the presumption that counsel's actions fall within the broad range of reasonableness, and afford 'great deference to counsel's tactical decisions.' [Citation.] Accordingly, [the California Supreme Court] ha[s] characterized defendant's burden as 'difficult to carry on direct appeal,' as a reviewing court will reverse a conviction based on ineffective assistance of counsel on direct appeal only if there is affirmative evidence that counsel had ' " 'no rational tactical purpose' " ' for an action or omission." (*Ibid.*)

The record before us does not reveal why defense counsel did not object to the restitution fine, criminal conviction assessment, or court operations assessment. There could have been legitimate reasons why defense counsel may have chosen not to object, including defendant's reported $800 monthly disability payments that he would resume

receiving upon release from prison. The trial court rejected the probation officer's recommendation to impose a $600 restitution fine and $1,685 in other fees and assessments. Counsel could have concluded that the fines and fees that were imposed were within defendant's ability to pay over time. We once again emphasize that the record is silent on the matter. Having found forfeiture, our analysis ends.

### III.    *Effect of Assembly Bill No. 1869.*

The $129 booking fee (former Gov. Code, § 29550.2), and $ 25 release after booking fee (former Pen. Code, § 1463.07) recently became "unenforceable and uncollectible" through the enactment of Assembly Bill No. 1869 (2019–2020 Reg. Sess.) (Assembly Bill 1869), effective July 1, 2021. Assembly Bill 1869 added section 1465.9, subdivision (a) (Stats. 2020, ch. 92, § 62), which states in relevant part:

> "The balance of any court-imposed costs pursuant to … Sections … 1463.07 …, as those sections read on June 30, 2021, shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated. (§ 1465.9, subd. (a), as amended by Stats. 2021, ch. 257, § 35.)

Assembly Bill 1869 also added Government Code section 6111, subdivision (a), which states in relevant part:

> "On and after July 1, 2021, the unpaid balance of any court-imposed costs pursuant to … Sections … 29550.2 …, as those sections read on June 30, 2021, is unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (Gov. Code, § 6111, subd. (a), as added by Stats. 2020, ch. 92,§ 11.)

Now that July 1, 2021, has passed, we think the plain language of these statutes require that we vacate any portion of the judgment imposing any unpaid balance of the $129 booking fee (former Gov. Code, § 29550.2) and $25 release after booking fee (former Pen. Code, § 1463.07). (See *People v. Clark* (2021) 67 Cal.App.5th 248, 259.)

16.

## DISPOSITION

Any portion of the judgment imposing any balance of the $129 booking fee, imposed pursuant to former Government Code section 29550.2, and the $25 release after booking fee, imposed pursuant to former Penal Code section 1463.07, unpaid as of July 1, 2021, is vacated.[6]

As modified, the judgment is affirmed.

HILL, P. J.

WE CONCUR:

FRANSON, J.

DESANTOS, J.

---

[6]    As the second amended abstract of judgment does not include the vacated fees, we shall not direct preparation of another abstract of judgment.