## UNITED STATES v. BERNAVA et al.
### No. 183.

Circuit Court of Appeals, Second Circuit.
March 7, 1938.

George Wolf, of New York City, for appellant Joe Bernava.

George E. Carmody, of New York City, for appellants Rocco J. De Grassi and George De Grassi.

Lamar Hardy, U. S. Atty., of New York City (John J. Dowling, of New York City, Joseph L. Delaney, of Albany, N. Y., Asst. U. S. Attys., and Frederick Backer, Sp. Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The appellants were tried in the District Court for the Southern District of New York on an indictment charging them in the first count with the transportation, in interstate commerce, in violation of the provisions of 18 U.S.C.A. § 415, of a United States Treasury note which had been stolen and which was of the face value of $100,000. They were charged in a second count with conspiring among themselves and others to violate the above-mentioned statute. They were convicted and sentenced on both counts and have appealed.

It was proved by evidence supplemented by stipulation that on December 13, 1934, negotiable United States Treasury notes of the value of $590,000 were stolen in the city of New York; that on March 19, 1936, defendant Espy, who has not appealed, and a man named Wolf, left New York City by train and arrived at Miami Beach, Fla., on March 21st. The next day Wolf met the two appellants De Grassi, who are brothers, and the three went to the Pelican Court Apartments in Miami Beach, where they met appellant Bernava and defendant Espy, and all five entered that building together. On the following day Espy, George De Grassi, and Wolf went to Nassau. On April 6th George De Grassi was seen entering the post office at West Palm Beach, Fla., with a man later identified as his brother Rocco. They were followed to nearby Kelsey City, where they went into a house. On the morning of April 8th five government agents hid themselves near that house and watched until the two De Grassi brothers drove up to it in an automobile. What

happened then is somewhat in dispute, but the jury would have been justified in finding from the evidence that the agents went up to the car; told the appellants that they were officers who wanted to ask them some questions; and that the appellants invited them into the house. Also that, after the officers entered the house with, and at the invitation of, the appellants, they arrested the two brothers and searched the house, all without a warrant. During the search the $100,000 United States Treasury note described in the first count in the indictment was found hidden in a bag of lima beans in the corner of an upper shelf in the kitchen. Both of the prisoners then denied having any knowledge of the bond, but a government agent testified that George De Grassi later told him that Espy had given him the note on the boat the day they went to Nassau.

There was also introduced in evidence over the objection of the defendants parts of six interstate telephone communications between appellant Bernava at Miami, Fla., and a man named Hartman at Rockville Center, N. Y. They had been intercepted by tapping the wire without the authorization of the speakers. In view of the decision in Nardone v. United States, 302 U.S. —, 58 S.Ct. 275, 82 L.Ed. —, the government concedes this evidence was erroneously admitted. It is clear that the reception of this evidence was prejudicial error as to Bernava.

It has been argued that the same result does not follow as to the appellants De Grassi. And, indeed, it may be possible to convict them again. But we cannot agree that their present conviction can be affirmed. The communications which were unlawfully intercepted were so prejudicial that, if those appellants were in them identified with the conspiracy, we cannot say that the jury would have convicted them had such evidence been excluded. On the contrary, we think part of it served to dispel any reasonable doubt as to their guilt which the jury might otherwise have had. In one of the communications intercepted Bernava told Hartman, "There are two brothers I'm dealing with, they had the impression I had them all. I got them in for a little money on the proposition." That the jury should have treated this as a direct reference to the two brothers on trial seems perfectly clear. We cannot believe that they did not do that very thing, for it was but reasonable to take what Bernava said

as the statement of one conspirator, when acting in furtherance of the conspiracy, that the two brothers with whom it was shown that he was having something to do in Florida at about the time of the communication with Hartman by telephone were the same two brothers he had got in on the proposition for a little money and at whose house one of the stolen Treasury notes was later found. They were the only two brothers shown to have had any connection whatever with the conspiracy.

As the erroneous admission of this evidence requires reversal, we find it unnecessary to deal with other issues raised.

The judgment is reversed and new trial ordered.