[Crim. No. 4463. In Bank. May 3, 1943.]

THE PEOPLE, Respondent, v. JACK VERTLIEB et al., Appellants.

194

Morris Lavine and Charles B. Hazlehurst for Appellants.

Earl Warren, Attorney General, and Frank Richards and Eugene M. Elson, Deputies Attorney General, for Respondent.

EDMONDS, J.—Following a trial upon an information charging Jack Vertlieb and Sam Richlin with the crime of bookmaking, as defined in section 337a of the Penal Code, the court found each of them guilty but ·suspended further proceedings and placed them upon probation. They have appealed from an order denying them a new trial.

The evidence shows that when two officers entered a room on the second floor of an apartment house in Los Angeles they found Richlin seated in a chair near a table where there were two telephones and some blank betting markers. Vertlieb was in a room nearby. In the presence of the appellants, the manager of the apartment house told the officers that Vertlieb had rented the room; that Richlin had been coming there for a couple of days and staying all day. The officer testifying to this conversation quoted her as saying ''that she didn't know what they were doing in the room, but that they were making a lot of telephone calls, and she was not interested in what went on.'' Neither of the appellants made any statement at that time, but when asked how long they had been taking bets there and recording them, the answer was ''About a week.''

Replying to a question asked by one of the officers concerning markers and scratch sheets, Vertlieb stated that he

had thrown them out of the window. This officer testified that he found blank markers and a racing form in the room and on the ground some markers with numbers on them.

There were two telephones with different numbers in the room. They were ringing when the officers entered. When answered by one of the officers in the presence of the appellants, a voice said "Here is the winner, 32, 28, 37, 19.60, 8.85, 4.40, 9.40, 4.60, and 4.40." A few minutes later the telephone rang and a voice said, "Jack, who won the seventh race?" The officer replied, "Not in yet." The party on the other end said, "Is this Jack?" The officer replied, "No, it isn't."

Soon the telephone again rang and a voice said, "Sam, 751 won across." On a call shortly after, a voice said, "H. R., is it too late for the eighth?" The officer replied, "No, I will take it." The person on the other end answered, "742, one to win." On another call a voice asked, "Is this Jack?" The officer replied, "No, Sam." The other party said, "Where is Jack?" The officer replied, "Gone home early," The reply was, "O. K. Thanks, Sam."

The other officer answered a telephone call and, as he related the conversation, a voice said, "Who is this?" He replied, "Jack." "It does not sound like Jack to me, was the response. The officer continued, "Yes, it is I, what do you want?" "No, I don't think it is Jack" came from the instrument as the person calling cut off the connection.

One of the officers, testifying as an expert, said that he was familiar with the paraphernalia used by bookmakers in registering bets. He identified a scratch sheet, not found in the room where the appellants were arrested, as a universally recognized authority listing the entries of horses at particular race tracks throughout the country on the day the markers were found. Comparing the betting markers with this scratch sheet, he could say that the numbers upon them indicated the names of the horses running at various tracks on that day, the amount of the wager and whether bet to win, place or show. The numbers, according to his testimony, also had other meanings relating to wagers on the horses.

The appellants contend that the evidence presented by the prosecution is insufficient to establish the corpus delicti. They also challenge the testimony concerning the telephone conversations as inadmissible under the provisions of the Federal Communications Act (48 Stat. 1064, 1103, 47 U.S.C. 605, 47 U.S.C.A. 605). In support of the convictions, the

People insist that the evidence, aside from the messages which were heard by the officers, shows that the appellants were occupying a room for the purpose of recording bets on the result of a horse race, and if the testimony as to what was said over the telephone is inadmissible, it is cumulative evidence only, not justifying a reversal.

The question concerning the use of the telephone messages as evidence has been decided adversely to the appellants. (*People* v. *Kelley, ante,* p. 169 [137 P.2d 1].) But even without the testimony of the officer repeating what he heard and said when the telephones were answered, the evidence thoroughly satisfies the requirement concerning proof of the corpus delicti. The record shows evidence that there were two telephones in a one-room apartment rented by Vertlieb for $5 per week, including the telephones; that Richlin came to the apartment every day and stayed all day; that one of the appellants said they had been taking bets for about a week; that blank betting markers and a racing form had been found in the room and filled-in markers on the ground below; and that there were a number of calls on the telephones during a brief period of time. From these facts it may reasonably be inferred that the appellants kept a room with paraphernalia for the purpose of recording bets upon horse races. (*People* v. *Kabakoff,* 45 Cal.App.2d 170 [113 P.2d 760]; *People* v. *Manning,* 37 Cal.App.2d 41 [98 P.2d 748].)

█ The appellants complain that the scratch sheet used by the officer as the basis for his testimony as to the meaning of the numbers on the betting markers was not found in the room where the other paraphernalia was obtained. But the foundation for its use was established by testimony that it was used by bookmakers throughout the United States for the purpose of enabling them to place their bets and obtain racing information for that purpose. It was not offered for the purpose of proving that the horses named ran at particular tracks on that day, but only that the numbers on the betting markers corresponded with those shown in it as representing the horses which the publication stated would run at certain tracks. As the asserted key to a code, it was proper evidence upon which to base an inference that the data on the markers were not meaningless numbers but part of a system used by bookmakers generally.

█ Moreover, the charge was a violation of the statute which makes it unlawful for anyone to keep or occupy: ". . . for any period of time whatsoever, any room . . . of

any kind, or any part thereof, with . . . paper or papers, apparatus, device or paraphernalia, for the purpose of recording or registering any bet or bets, . . . upon the result or purported result, of any trial, or purported trial, or contest, or purported contest, of skill, speed or power of endurance of . . . or between . . . beasts. . . . '' (Sec. 337a, subd. 2, Pen. Code.) If the evidence shows that the appellants occupied a room with paraphernalia for the purpose of recording bets, it is immaterial whether the contest or contests upon which those bets were made were actually held. The statute proscribes the recording of bets upon any contest or purported contest. (*People* v. *Hinkle*, 64 Cal.App. 375 [221 P. 693].) █ And the fact that the racing form found by the officers in the room is one sold at newsstands and used by the public, as well as bookmakers, does not make it inadmissible as evidence. The trier of fact was entitled to consider its character and the use to which it might be put in connection with the other evidence in the case.

The order denying a new trial is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., and Traynor, J., concurred.

CARTER, J.—I dissent, for the same reasons and upon the same grounds as set forth in my dissenting opinion in the case of *People* v. *Kelley*, Crim. No. 4419, *ante*, p. 169 [137 P.2d 1], this day filed.

Peters, J. pro tem., concurred.

Appellants' petition for a rehearing was denied June 1, 1943. Carter, J., and Schauer, J., voted for a rehearing.