[Crim. No. 3781.   Second Dist., Div. Three.   Aug. 29, 1944.]

THE PEOPLE, Respondent, v. JOHN P. ONOFRIO, Appellant.

Morris Lavine for Appellant.

Robert W. Kenny, Attorney General, and T. G. Negrich, Deputy Attorney General, for Respondent.

DESMOND, P. J.—In a jury-waived trial appellant was convicted of violating section 337a, subdivision 2, of the Penal Code, which prohibits the keeping or occupancy of premises ''for any period of time whatsoever'' with a book or books, paper or papers, apparatus, device or paraphernalia for the purpose of recording or registering bets upon the result of horse races and other contests. ■ He asks for reversal upon the ground that error arose when the trial court admitted in evidence telephone conversations which he claims should have been barred under the Federal Communications Act of 1934 (Tit. 47, § 605, U. S. Codes Ann.) ; claiming further that the admission of this evidence violates the Fourteenth Amendment of the United States Constitution. In connection with this latter claim he calls attention to the fact that the arresting officers entered the room where appellant was apprehended, and where the incriminating records were found and telephone messages received, by crawling through a window after failing to obtain admission by knocking at the door. He reminds us that section 19, article I, of the Constitution of California, and Amendment IV of the federal Constitution, recognize in identical language the right of the people to be secure in their persons, houses and effects against unreasonable seizures and searches, and provide also that no warrant shall issue but on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized. He says in his brief: ''The question then arises, whether the use of this evidence which was secured in an exploratory search of the place where the defendant was, without any search warrant or other legal process, constitutes a violation of the Fourteenth Amendment, which holds that no person shall be deprived of life, liberty or property without due process of law.''

Appellant relies for an affirmative answer to this question upon *Jones* v. *Securities & Exchange Commission,* 298 U.S. 1 [56 S.Ct. 654, 80 L.Ed. 1015], and *Hague* v. *Committee for Industrial Organization,* as reported in 101 F.2d 774. The first of these decisions, at the point where quotation is made in appellant's opening brief, warns against encroachment by

administrative bureaus and commissions upon the fundamental rights, privileges and immunities of the people, but decides no constitutional question. The Hague case came before a federal District Court by the provisions of section 24(14) of the Judicial Code, and resulted in an injunction restraining the mayor and other named officials of Jersey City from interfering with the proposal of the C. I. O. and allied organizations to put on a series of public meetings in the parks of that city. From the decree of the District Court defendants appealed, with the result that the decree was modified and affirmed by the Circuit Court of Appeals, Third Circuit. In the opinion to which this appellant refers the Circuit Court used the following language (p. 787):

"We are unable to perceive any reason, however, why the right to be free from unreasonable searches and seizures set forth in the Fourth Amendment should not stand upon a parity today with freedom of religion, of speech, of the press and of assembly as guaranteed by the First Amendment. All of these rights are of equal importance to the individual and in our opinion they stand as pari materia. Liberty of the person, including freedom of locomotion, is, as we have seen, one of '. . . the privileges or immunities of citizens of the United States . . .' protected by the Fourteenth Amendment against abridgment by the states. Among those rights and liberties of which the states may not deprive the individual under the due process clause of that Amendment are freedom of speech, *Stromberg* v. *California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117, 73 A.L.R. 1484, and freedom of the press, *Gitlow* v. *New York, supra* [268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138]. In our opinion freedom from unreasonable searches and seizures is included as well. These fundamental civil rights were secured to the individual against infringement by the Federal government by the First and Fourth Amendments. . . . Protected from abridgment by the Federal government by the First and Fourth Amendments, they are protected from abridgment by the states by the Fourteenth Amendment."

But on certiorari, in an opinion to which appellant's counsel has made no reference, the Supreme Court of the United States failed to give its approval to this pronouncement of the Circuit Court, Mr. Justice Roberts saying: "In the light of this reservation we think there was no occasion for the Circuit Court of Appeals to discuss the question whether ex-

emption from the searches and seizures proscribed by the Fourth Amendment is afforded by the privileges and immunities clause of the Fourteenth, and we have no occasion to consider or decide any such question." (*Hague* v. *Committee for Industrial Organization* (1938), 307 U.S. 496, 517 [59 S.Ct. 954, 83 L.Ed. 1423, 1437].)

In this situation, with the question which appellant propounds still unanswered by the United States Supreme Court, we feel no urge and see no reason to depart from the principles declared by our California courts in their careful consideration of the subject.

In the case of *People* v. *Mayen* (1922), 188 Cal. 237 [205 P. 435, 24 A.L.R. 1383], it was argued that the search and seizure which had occurred were in violation of the identical provisions of the federal and state Constitutions to which we have referred and therefore that the property seized could not be received in evidence, but the rationale of the court rejected that argument (p. 241): "All consideration of the application of the federal constitution to this case may be at once eliminated, as it is well settled that the fourth amendment to the constitution of the United States, relating to searches and seizures, only applies to the federal government and its agencies" (citing cases); and while "It must be admitted . . . that the search and seizure was unreasonable and unlawful and violated the rights of appellant as guaranteed by section 19 of article I of the constitution of California," still "There was nothing in the character of the articles taken, or in the fact that they belonged to the defendant, which affected their competency as evidence." The court then continued: "There is no rule better established or more universally recognized by the courts than that where competent evidence is produced on a trial the courts will not stop to inquire or investigate the source from whence it comes or the means by which it was obtained."

This reasoning in the Mayen case found approval in the recent case of *People* v. *Gonzales* (1942), 20 Cal.2d 165 [124 P.2d 44], where it is cited with other cases and where the court also passed adversely upon the same contention that is made in the instant case, namely, that "the prohibition in the Fourth Amendment of unreasonable searches and seizures is included in the provision of the Fourteenth Amendment that no state shall deprive any person of life, liberty, or property without due process of law, and therefore that under the

interpretation given to the Fourth Amendment by the federal courts the introduction of evidence obtained by an illegal search and seizure constitutes a denial of due process of law.'' The court points out that ''A criminal trial does not constitute a denial of due process of law so long as it is fair and impartial,'' and ''The use of evidence obtained through an illegal search and seizure . . . does not violate due process of law for it does not affect the fairness or impartiality of the trial. [Cases cited.] The fact that an officer acted improperly in obtaining evidence presented at the trial in no way precludes the court from rendering a fair and impartial judgment.'' A writ of certiorari was denied by the Supreme Court of the United States in the Gonzales case (317 U.S. 657 [63 S.Ct. 55, 87 L.Ed. 528]).

The appellant in *People* v. *Kelley* (1943), 22 Cal.2d 169 [137 P.2d 1], was represented by the same attorney who appears for the appellant in the instant case, and contended that his conviction upon the charge of violating the same penal statute here involved should not stand for the reason that evidence presented in that case was obtained through illegal search and seizure, in that it consisted in part, as in the present case, of telephone messages intercepted by an arresting officer. It was contended there, as it is here, that under the Fourteenth Amendment and its due process clause no such testimony obtained in violation of the Fourth Amendment should have been admitted. The court disposed of this claim by saying that the decision in the Gonzales case was determinative of the contentions urged by the appellant, and then proceeded to discuss his additional claim presented in that appeal, as it is in this, that error arose when the telephone messages received by the officer were admitted in evidence notwithstanding objections based upon section 605 of the Federal Communications Act, which says: ''. . . no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. . . .'' The court decided that since the defendant was not in fact a party to the conversations he could not be considered a ''sender,'' and therefore was not entitled to the protection of the act against the divulgence of the messages. See also *People* v. *Vertlieb* (1943), 22 Cal.2d 193, 195 [137 P.2d 437], where the same claim of error, made by the same attorney as in the instant appeal, was denied.

The defendant claims, also, that the corpus delicti was not proved and that the only evidence on which the trial court relied consisted of the telephone conversations related by the officer who heard them; therefore that the evidence is insufficient to support the verdict. We do not agree with his statement as to the quantum of evidence. In addition to the telephone messages the trial court heard the testimony of the police officer that the appellant, replying to an inquiry as to how long he had been bookmaking in the apartment, said "one day"; and in response to the question as to how much he was making, answered: "Well, I am not the real bookmaker, I am doing it for a friend of mine, and he is going to settle up with me later. I don't know how much he is going to give me." The appellant denied at the trial that he made these answers but the trial judge, of course, was entitled to believe the officer rather than the defendant. We have already alluded to the fact that the officers who made the arrest were unable to gain admission to the apartment where appellant met them by knocking at the door. As the officers entered the appellant emerged from an adjoining toilet room. A telephone instrument was on a table in the living room, with the receiver off the hook, and also on the table were the following articles all of which were admitted in evidence: a pad of 14 sheets with penciled notations on some of them which the officer testified were known as ABC markers; a pencil; another pad of markers, blank except for printed lines marking them off in columns; and a copy of the Daily Turf Reporter, a "scratch sheet" so called, containing the names of horses running that day at racetracks in various parts of the country, each horse being numbered in the publication. The officer replaced the telephone receiver on the hook, in the presence of the appellant, and answered the call which came almost immediately thereafter as well as several others which followed at short intervals. These calls were made by persons giving a name which in one or more instances was entered in pencil at the top of one of the sheets in the marker pad Exhibit 1. The telephone calls consisted, according to the officer, of inquiries as to whether a horse was reported winning a place, or occasionally indicated the placing of a bet by the person calling. The entries made on the pad and indicated by pencil notations on the scratch sheet bore a close relation to the telephone messages, and under the circumstances we feel that not only was the corpus delicti proved but that the evidence amply

justified the conviction. (See *People* v. *Manning* (1940), 37 Cal.App.2d 41 [98 P.2d 748]; *People* v. *Kabakoff* (1941), 45 Cal.App.2d 170 [113 P.2d 760]; *People* v. *Allen* (1943), 22 Cal.2d 191 [137 P.2d 439]; *People* v. *Cohen* (1941), 48 Cal.App.2d 459 [119 P.2d 995], and *People* v. *Newland* (1940), 15 Cal.2d 678 [104 P.2d 778].)

Appellant asserts that the telephone messages, as related by the officer at the trial, should have been ruled out upon his objection that they constituted "hearsay," but we are satisfied no error occurred in this regard under the reasoning of the court considering a similar situation in *People* v. *Reifenstuhl* (1940), 37 Cal.App.2d 402, 405 [99 P.2d 564].

The arresting officer in this case stated that he was familiar with turf literature used by bettors and bookmakers in carrying on their business of giving bets and receiving bets, and in demonstrating the system employed in registering and recording bets by bookmakers he testified concerning the significance and meaning of the information contained in the Daily Turf Reporter and the markers. Appellant complains that the witness was not shown to have sufficient qualifications to justify the court's considering him as an expert. He says that "It has been the all too common practice to declare that a police officer, who merely states he has made arrests, is an expert on the subject." But in this case the officer testified that he not only made arrests in approximately three hundred and fifty cases in regard to bookmakers on horse races, but also that he had testified concerning the meaning of the symbols and signs used by bookmakers in recording bets on horse races "About approximately 125 times." Inasmuch as the Daily Turf Reporter was printed in English and there was nothing mysterious about the use of markers, no high degree of scientific knowledge or special skill was necessary to qualify this officer as an expert. Such study of the subject as was incidental to his work on the vice squad, together with his extensive experience, served to qualify him satisfactorily. (See *People* v. *Mason* (1940), 37 Cal.App.2d 407 [99 P.2d 567], and *People* v. *Cohen, supra.*)

The judgment is affirmed.

Shinn, J., and Wood (Parker), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 25, 1944. Carter, J., and Schauer, J., voted for a hearing.