[Crim. No. 4665. Second Dist., Div. Two. Oct. 30, 1951.]

THE PEOPLE, Respondent, v. RAY C. CHANNELL, Appellant.

Russell E. Parsons for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

WILSON, J.—Defendant was found guilty of robbery of the first degree. His motion for a new trial was denied and he has appealed from the judgment of conviction and the order denying a new trial.

### STATEMENT OF THE EVIDENCE

In the morning of July 15, 1950, the victim, Rutherford, was driving his car in the city of Maywood. He was stopped by another automobile in which were defendant and Frick Wills. Wills, who had a gun, got into the back seat of Rutherford's car and compelled him to drive two or three blocks when Wills took Rutherford's money, ordered him to get out of the automobile and drove away. In a few minutes Rutherford was picked up by police officers and after driving about a half mile they discovered Rutherford's car. Wills was about 20 or 30 feet distant from it. The officers arrested him and found in his possession a gun which was similar to one that had been purchased by defendant a few days previously from one Koopman.

On July 19th or 20th Allen Wills, Frick's brother, told defendant his brother wanted to know where his (Frick's) car was and had said defendant should know where it was located. Defendant said he thought it was on Eastern Avenue just north of Florence. Also he said if he knew somebody

he could trust he would like to get his fingerprints off the car because they were there. Allen Wills asked about the keys to the car and defendant replied: "The keys are gone." Allen Wills found his brother's car in the location indicated by defendant. Later a police officer found the car at the same location. The certificate in it showed it was registered to Frick Wills and Viola Wills. There were no keys in it.

On July 26th a deputy from the sheriff's office was in Frick Wills' home where he had made connection with the telephone line. He heard Wills dial the telephone and say, "Hello Ray?" Another voice said, "Yes." Wills said, "This is Frick . . . I am at home. I would like to talk to you. I don't think we should talk over the phone, can you come over?" In a few minutes a car stopped in front of Wills' home and defendant and a woman came into the house. The same officer with others were in the bedroom of the Wills house with a listening device connected with a concealed microphone in the living room. Defendant asked Wills, "When did you get out?" Wills replied, "This morning. I am out on bond." Defendant asked Wills, "How do you stand on the thing?" Wills said, "Well, I am a dead duck. They got me cold. Whatever happened that you didn't pick me up?" Defendant answered, "Well, I couldn't; there was cops all over the place. Some were right across in front of me." Wills asked, "Where is my car?" and defendant answered he had told Allen where it was. Wills said, "Are your prints on it?" and defendant answered, "I suppose they are."

At the trial Frick Wills, who had previously been charged with first degree robbery, testified that defendant told him Rutherford was a bookmaker who owed him (defendant) money and did not want to pay him so they would have to take it by force. Wills told defendant he knew Rutherford's movements and they could follow him Saturday morning. Wills asked defendant if he was going to take his gun and defendant said he would do so. Defendant said he would rather have someone else go with Wills than go himself and Wills said, "If it is your money and I am supposed to get half for getting it I am surely not going to take anyone else along. If it is your gun I will just have to go with you." Defendant said Wills would have to use his car because defendant's automobile was known to Rutherford. They arranged that when they stopped Rutherford, Wills was to get the money and defendant would drive, after which he would

go around the block and meet Wills when the latter had abandoned Rutherford's car.

In the morning of the robbery Wills went to defendant's house and asked where the gun was. Defendant said it was under the coffee table. Wills got the gun and put it in the car. Wills and defendant then went to Maywood where the robbery was accomplished in the manner above related.

Prior to the conversation overheard by the officers in Wills' house defendant had been arrested for the crime and released. About 10 days later he was rearrested at which time the police officer told him he knew he (defendant) owned the gun which was involved in the robbery. Defendant did not deny ownership and did not tell the officer his gun was missing or that he had shown the gun to Wills, and never reported to the police that the gun was gone.

The foregoing evidence shows beyond question defendant's participation in the crime and sustains the judgment of conviction. The evidence given by an attorney who related a conversation he had had in jail with defendant and Frick Wills, and defendant's testimony which is contradictory of much of the evidence given against him merely creates a conflict which has been determined by the trial court. The judgment of that court upon conflicting evidence is binding on us.

### Corroboration of the Accomplice

Frick Wills was admittedly an accomplice of defendant in the commission of the crime. Defendant contends that the testimony given by the accomplice was not corroborated as required by section 1111 of the Penal Code[1] and for that reason the evidence is insufficient to sustain the conviction. ■ Corroborating evidence is not sufficient if it merely raises a suspicion of defendant's guilt yet it is sufficient if it of itself tends to connect defendant with the commission of the offense, although it is slight, and entitled when standing by itself to but little consideration. (*People* v. *Kempley,* 205 Cal. 441, 456 [271 P. 478].) Within a few months after the Kempley case was decided the Supreme Court in *People* v. *Negra,* 208

---

[1] Section 1111 reads: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof. An accomplice is hereby defined as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given."

Cal. 64, 69-70 [280 P. 354], said that a defendant's own statements and admissions in connection with other testimony may afford corroborative proof sufficient to sustain a verdict and it is not necessary that the corroboration should go so far as to establish by itself and without the aid of the testimony of the accomplice that the defendant committed the crime. ■ To be sufficient the corroborative evidence in itself must be of an inculpatory character and must tend without the aid of evidence of accomplices to implicate defendant in the commission of the crime. (*People* v. *Garrison,* 80 Cal.App.2d 458, 461 [181 P.2d 738].) If the evidence of the accomplice is eliminated and that of other witnesses is examined with a view to ascertaining whether there be inculpatory evidence—evidence tending to connect the defendant with the offense—and if such be the case the accomplice is corroborated. (*People* v. *Kazatsky,* 18 Cal.App.2d 105, 110 [63 P.2d 299]; *People* v. *Shaw,* 17 Cal.2d 778, 803 [112 P.2d 241].)

■ Corroborating evidence may consist of testimony of the defendant himself and inferences therefrom as well as inferences from the circumstances surrounding the criminal transaction. (*People* v. *Wilson,* 25 Cal.2d 341, 347 [153 P.2d 720]; *People* v. *Malone,* 82 Cal.App.2d 54, 63 [185 P.2d 870].) ■ The possession of a gun similar to that used in the commission of the crime is competent corroborative evidence. (*People* v. *Henderson,* 34 Cal.2d 340, 343 [209 P.2d 785].) ■ The evidence of Frick Wills, the accomplice, is corroborated by the evidence that a few days before the commission of the crime defendant purchased a gun similar to that used by Wills in the robbery and hid it under a table; the use of a similar gun by Wills in the robbery; defendant's failure to reply when a police officer said he knew the gun belonged to defendant, although he knew the police were endeavoring to ascertain whether he owned the gun that had been used in the robbery; defendant's failure to report to the police at that time or at all that his gun was missing; his failure to mention the absence of the gun to Frick Wills, who was being held for the robbery; his expressed wish to Allen Wills that his fingerprints might be removed from the car if he knew someone he could trust; his knowledge of the location of Frick Wills' car and that the keys were not in it; his statements which were overheard by the officers at Frick Wills' house.

Defendant's statements and admissions made during the

conversation at Frick Wills' home which were overheard by the officers and his statements to Allen Wills are sufficient to corroborate the accomplice, and coupled with the other evidence warranted the judgment of conviction. (*People* v. *Negra*, 208 Cal. 64, 69-70, *supra*.)

## ADMISSIBILITY OF EVIDENCE OF CONVERSATIONS OVER TELEPHONE AND DICTAPHONE

Defendant contends that the court erred in admitting the testimony of the officer relating to the intercepted telephone message as being in violation of section 640 of the Penal Code[2] and of the Federal Communications Act (47 U.S.C.A., § 605)[3]

---

[2]Section 640 reads: "Every person who, by means of any machine, instrument, or contrivance, or in any other manner, willfully and fraudulently, or clandestinely taps, or makes any unauthorized connection with any telegraph or telephone wire, line, cable, or instrument under the control of any telegraph or telephone company; or who willfully and fraudulently, or clandestinely, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any telegraph or telephone wire, line, or cable, or is being sent from, or received at any place within the state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained; or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things hereinabove mentioned, is punishable as provided in section 639."

[3]Section 605 reads: "No person receiving or assisting in receiving, or transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, to any person other than the addressee, his agent, or attorney, or to a person employed or authorized to forward such communication to its destination, or to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, or to the master of a ship under whom he is serving, or in response to a subpena issued by a court of competent jurisdiction, or on demand of other lawful authority; and no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; and no person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by wire or radio and use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto; and no person having received such intercepted communication or having become acquainted with the contents, substance, purport, effect, or meaning of the same or any part thereof, knowing that such information was so obtained, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of the same or any part thereof, or use the same or any information therein contained for his own benefit or for the benefit of another not entitled thereto: *Provided*, That this section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication broadcast, or transmitted by amateurs or others for the use of the general public, or relating to ships in distress."

and the evidence obtained by the use of the microphone which he asserts was obtained contrary to section 653h of the Penal Code.[4] With reference to tapping telephone wires defendant cites *United States* v. *Bernava*, 95 F.2d 310, *Nardone* v. *United States*, 302 U.S. 379 [58 S.Ct. 275, 82 L.Ed. 314], and *Weiss* v. *United States*, 308 U.S. 321 [60 S.Ct. 269, 84 L.Ed. 298]. These cases set forth the federal rule but they are not authority upon the admission of evidence in state courts.

A casual glance at the digests would have demonstrated the futility of raising such questions at this late day when there are scores of decisions adverse to the points presented by defendant. The rule adopted by the United States courts is not followed in California. In this jurisdiction it is established and universally recognized that where competent evidence is produced and offered the court will not inquire into or investigate its source or the means by which it was obtained. (*People* v. *Mayen*, 188 Cal. 237, 243 *ff.* [205 P. 435, 24 A.L.R. 1383].) Evidence obtained by illegal search and seizure does not affect its admissibility. (*People* v. *Gonzales*, 20 Cal.2d 165, 169 [124 P.2d 44], cer. den. 317 U.S. 657 [63 S.Ct. 55, 87 L.Ed. 528], rehearing den. 317 U.S. 708 [63 S.Ct. 155, 87 L.Ed. 564]; *People* v. *Beilfuss*, 59 Cal.App. 2d 83, 88 [138 P.2d 332], cer. den. 321 U.S. 746 [64 S.Ct. 529, 88 L.Ed. 1048]; *People* v. *Harmon*, 89 Cal.App.2d. 55, 58 [200 P.2d 32].) Although the defendant may have civil or criminal remedies against the officers by reason of their unlawful acts the state may nevertheless use the evidence so illegally obtained. (*People* v. *Gonzales, supra*, p. 169.)

 Evidence of the contents of telephone messages intercepted without the consent of the sender is admissible notwithstanding such interception was in violation of the Federal Communications Act. (*People* v. *Kelley*, 22 Cal.2d 169, 173 *ff.* [137 P.2d 1], appeal dismissed 320 U.S. 715 [64 S.Ct. 264, 88 L.Ed. 420], rehearing den. 321 U.S. 802 [64 S.Ct. 527, 88 L.Ed. 1089]; *People* v. *Vertlieb*, 22 Cal.2d 193, 196 [137 P.2d 437]; *People* v. *Onofrio*, 65 Cal.App.2d 584, 585-

---

[4]Section 653h reads: "Any person who, without consent of the owner, lessee, or occupant, installs or attempts to install or use a dictograph in any house, room, apartment, tenement, office, shop, warehouse, store, mill, barn, stable, or other building, tent, vessel, railroad car, vehicle, mine or any underground portion thereof, is guilty of a misdemeanor; provided, that nothing herein shall prevent the use and installation of dictographs by a regular salaried peace officer expressly authorized thereto by the head of his office or department or by a district attorney, when such use and installation are necessary in the performance of their duties in detecting crime and in the apprehension of criminals."

588 [151 P.2d 158].) ▆ Furthermore, section 640 of the Penal Code denounces the clandestine or unauthorized tapping or connection with a telephone wire. Since Frick Wills knew the officer had made the connection and was listening the latter's act was neither clandestine nor unauthorized. Section 653h declares it to be a misdemeanor for any person to install or use a dictograph in any office or room without the consent of the owner, lessee or occupant. The microphone was placed in Frick Wills' home and since he was a party both to the telephone conversation and to that which occurred in his home it will be presumed that he consented to and authorized both the wire tapping and the installation of the microphone.

Judgment and order denying a new trial are affirmed.

Moore, P. J., and McComb, J., concurred.