[Crim. No. 5713. Second Dist., Div. Three. Nov. 30, 1956.]

THE PEOPLE, Appellant, v. ANNA MILLER, Respondent.

Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, S. Ernest Roll, District Attorney (Los Angeles), and Jere J. Sullivan, Deputy District Attorney, for Appellant.

G. Vernon Brumbaugh for Respondent.

WOOD (Parker), J.—By an information defendant was charged, in three counts, with violating section 337a, subdivisions 1, 2, and 4 of the Penal Code. Count I charged violation of subdivision 1 (bookmaking upon the result of horse racing). Count II charged violation of subdivision 2 (occupying a residence with books, papers and paraphernalia for the purpose of recording bets). Count III charged violation of subdivision 4 (recording bets).

Defendant's motion to set aside the information, under section 995 of the Penal Code, was granted. The People appeal from the order granting the motion.

Said section 995 provides that an information must be set aside by the court, upon defendant's motion, if the defendant has been committed without reasonable or probable cause.

The question is whether the transcript of the preliminary examination shows that defendant was committed without reasonable or probable cause.

Counsel for defendant (respondent) states that his motion to set aside the information was based upon the ground that

the evidence was obtained by unlawful search and seizure and in violation of section 605 of the Federal Communications Act.

Officer Diero, one of the arresting officers, testified as follows: They arrested defendant on March 22, 1956, about 1:50 p. m., in a single-story residence in Los Angeles. They knocked at the front door of the residence. The door was opened by an unknown male. They identified themselves as police officers, and then they walked into the kitchen where they saw the defendant sitting in a chair with a table in front of her. On the table there were a telephone (Webster 15425), a National Daily Reporter of March 22, numerous slips of paper with ink notations, a clock, radio, pencil, and a book entitled "Parlays at a Glance." They did not have a search warrant or a warrant for arrest, and they did not "verbally" ask for permission to enter. Before going into the residence they had information from an informant that the telephone number Webster 15425 was being used for bookmaking purposes. He (witness) had talked personally (face to face) with the informant just before noon. He (witness) had received information from that informant previously, and the information had proved to be reliable—three or four arrests had been made as a result of that information. After receiving the information about the telephone, he (officer) made a check of the number with the telephone company through a liaison officer, and the report was that the number was registered to James A. Harvey. Other information he (officer) had before going into the residence was that about 1:40 p. m. he and Officer Jackson had the premises under surveillance, and then Officer Walter went to a pay telephone about half a block away and called the number Webster 15425, and an unknown female voice answered and Officer Walter said: "This is Jack. Have Larry call me. By the way, who won the first at Gulfstream?" The female voice replied, "Military Trail."

It was stipulated that Officer Diero is an expert as to the custom and manner in which bookmaking is conducted in Los Angeles County.

Officer Diero testified further that he first saw Exhibit 2 (for identification) on the table in front of defendant. (That exhibit is a slip of paper [bank-deposit slip] with pencil and ink writing on it.) He made a comparison of the writing on Exhibit 2 with Exhibit 3 for identification. (Exhibit 3 is a National Daily Reporter scratch sheet dated March 22, 1956.)

In the second (third) line on the slip of paper (Exhibit 2) are the numerals 521222, and to the right thereof are the numerals 12.10, and to the right of that is the numeral 6. He compared that line with the scratch sheet (Exhibit 3) and in his opinion the slip refers to a horse listed to run in a race on March 22, and the slip is a wager on the horse. In his opinion the 5 (in the number 521222) indicates Gulfstream Park, the 2 indicates the second race there, and the 1 indicates the first number 1 handicap position which is a horse named Bit O'Mama. The 222 indicates $1.00 win, $2.00 place, $2.00 show. The 12.10 indicates a payoff on the horse and the 6 indicates the total wager. In his opinion the word Leo at the top of the slip indicates the agent; and the word Kay indicates the bettor. He checked said third line of the slip with a National Daily Reporter scratch sheet of March 23 (Exhibit 4 for identification), and he found that in the second race at Gulfstream on March 22 a horse named Bit O'Mama won the race; and the payment was $5.00 to win, $3.80 to place, and $3.30 to show, making a total of $12.10 on a wager of $2 to win, place, and show. He made similar comparisons of other numbers on the slip (Exhibit 2) with the scratch sheet of March 22 (Exhibit 3) and he formed the opinion that the numbers were bets on horses running on March 22. In his opinion the slip of paper (Exhibit 2) is a betting marker.

It was stipulated that two handwriting cards (Exhibit 1 for identification), upon which the name Anna Miller appears, were signed and filled out by the defendant in the presence of Officer Diero.

It was also stipulated that Mr. Woodward is an expert in the comparison of handwriting. He testified that he compared Exhibits 1 and 2, and in his opinion the same person wrote both documents (exhibits).

Officer Diero testified further that, after the arrest, he asked defendant if she had made the notations on Exhibit 2; and she replied, "Yes." He asked her if those were all the bets she had taken that day; and she replied, "Yes." He asked her how long she had been making book there; and she replied, "Since yesterday." She said she was hired by a person named "Charlie."

A stenographer for the police department testified that she went into said residence on said March 22 about 1:50 p. m. She was in the residence about an hour and during that time she answered the telephone, Webster 15425, about a dozen times.

She made notes while she was talking on the telephone, and when she returned to her office she reduced the notes to typewriting. While testifying she was reading from the typewritten notes. In the first telephone call a male voice said, ''This is Leo for Izzy. These are all on Tan. 771 for 1. For David 61, 1 and 1, 471 and 1, 58, 1. For Sol, 611, 3 and 3. Paul E, E and Ed in Edward, 41 to 71, 20 and 2, and call me back.'' In the next telephone call a female voice said, ''This is Corinne for Perry. Have I got time for the second?'' The witness replied, ''No, you just missed it. How about the third?'' The caller said, ''Give me Lighten Dawn, two.'' The witness said, ''Two to win, is that all?'' The caller replied, ''Yes. What position is that?'' The witness said, ''Third.'' The caller said, ''Three, Okay, bye.'' The other telephone calls were of a similar nature. On cross-examination she said that the officers told her to answer the telephone. She did not inform the callers who she was. She used the telephone for the purpose of ascertaining what was said.

The Exhibits 1, 2, 3, and 4 for identification were received in evidence.

█ The evidence before the committing magistrate was sufficient to show there was probable cause for the arresting officers to believe, prior to entering the house, that a felony was being committed therein. There was evidence that Officer Diero had received information personally from a reliable informant that said telephone number was being used for bookmaking. In addition thereto he had information that his partner, Officer Walter, had called said number, a few minutes before the officers entered the house, and asked ''[W]ho won the first at Gulfstream?'' and the reply was ''Military Trail.'' In *People* v. *King,* 140 Cal.App.2d 1 [294 P.2d 972], the charges were the same as the charges herein, and the facts with reference to probable cause for entering the house were similar to the facts herein as to probable cause for entering. In that case one of the arresting officers received information from an informant that defendant King was using two certain telephone numbers for bookmaking. The officer therein had received correct information on previous occasions from the informant. In that case, the officer observed the informant while the informant dialed one of the telephone numbers, and the officer listened to the telephone conversation wherein the informant said, ''Give me ten dollars to win on Rover Bill in the sixth race at Golden Gate,'' and a voice answered, ''O.K., I got your bet.'' Also, in that case

the officer was told by another officer that he (other officer) had called that number on two occasions and obtained race results. The facts in that case as to actually entering the house were different from the facts in the present case as to entering, in that, in the cited case force was used to open the door—the officer knocked on the door and identified himself, and after waiting about two minutes and receiving no response he forced the door open by kicking it in. It was held in that case (p. 7) that the entry was lawful.

In the present case, after the officer had knocked on the door and it had been opened by an unknown male, the officers identified themselves as officers and walked in. There was no evidence that force was used, and no evidence that the entry was against the will of the person who opened the door. ■ In the absence of evidence to the contrary, it is presumed the officers acted legally. (See *Badillo* v. *Superior Court*, 46 Cal.2d 269, 272 [294 P.2d 23].) "[T]he information should not be set aside on the ground that essential evidence was illegally obtained if there is any substantial evidence or applicable presumption to support a contrary conclusion [citations], and in such cases the ultimate decision on admissibility can be made at the trial on the basis of all of the evidence bearing on the issue." (*Ibid.*) The evidence before the committing magistrate did not show that the entry was unlawful.

■ The testimony of the stenographer, who answered the telephone in the house, as to what was said to her by the persons who called by telephone was admissible. In *People* v. *King, supra,* it was said at page 9: " 'It is the established rule that the court may properly receive the evidence of such conversations, not for the purpose of establishing the truth of what was said over the telephone, but for the purpose of establishing that the room was being occupied for placing bets on horse races.' " ■ The evidence as to the telephone conversations was not obtained in violation of section 605 of the Federal Communications Act. Said section provides: ". . . no person not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person; . . ." The defendant was not a "sender" within the meaning of that section. (See *People* v. *Kelley,* 22 Cal.2d 169, 175 [137 P.2d 1]; *People* v.

*Vertlieb*, 22 Cal.2d 193, 196 [137 P.2d 437] ; *People* v. *Onofrio*, 65 Cal.App.2d 584, 588 [151 P.2d 158].)

The evidence regarding the slips of paper, scratch sheet, book, telephone, and other things on the table in front of defendant was admissible.

The trial judge erred in setting aside the information. The transcript of the preliminary examination shows that defendant was committed with reasonable and probable cause.

The order setting aside the information is reversed.

Shinn, P. J., and Vallée, J., concurred.